1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   DIANA BERNHARDT,                         No.  2:13-cv-01380-KJM-AC

12                Plaintiff,

13         v.                                  ORDER

14   STATE OF CALIFORNIA
     DEPARTMENT OF CORRECTIONS
15   AND REHABILITATION (HIGH
     DESERT STATE PRISON),
16
                  Defendant.
17

18

19              Diana Bernhardt, the plaintiff, worked for the California Department of

20   Corrections and Rehabilitation (the CDCR) at High Desert State Prison.  She alleges her former

21   supervisor, Lt. David Griffith, created and presided over a sexually hostile work environment, one

22   that forced her into a medical leave of absence in February 2012.  She also claims the CDCR

23   retaliated against her after she reported Lt. Griffith's actions.  The CDCR has moved for summary

24   judgment.  The court held a hearing on January 16, 2015.  Shelley Bryant appeared for

25   Ms. Bernhardt, and Scott Sommerdorf appeared for the CDCR.  After evaluating the evidence,

26   the parties' briefs, and the arguments at the hearing, the court GRANTS the motion in part and

27   DENIES it in part.

28

1    I.        EVIDENTIARY OBJECTIONS

2              The parties dispute the admissibility of several documents.  At summary judgment,

3    admissibility of evidence depends not on form, but on content.  *Fraser v. Goodale*, 342 F.3d

4    1032, 1036 (9th Cir. 2003); *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001) (citing

5    *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).  The party seeking admission of evidence

6    "bears the burden of proof of admissibility."  *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004

7    (9th Cir. 2002).  If the opposing party objects to the proposed evidence, the party seeking

8    admission must direct the court to "authenticating documents, deposition testimony bearing on

9    attribution, hearsay exceptions and exemptions, or other evidentiary principles under which the

10   evidence in question could be deemed admissible . . . ."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d

11   376, 385–86 (9th Cir. 2010).  A district court may nonetheless exercise its discretion "to be

12   somewhat lenient" should a party opposing summary judgment fall short of the "formalities of

13   Rule 56."  *Sch. Dist. No. 1J, Multnomah Cnty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1261 (9th Cir.

14   1993).  *See also Celotex*, 477 U.S. at 324 ("We do not mean that the nonmoving party must

15   produce evidence in a form that would be admissible at trial in order to avoid summary judgment.

16   . . . [Rule 56] permits a proper summary judgment motion to be opposed by any of the kinds of

17   evidentiary materials listed in Rule 56(c), except the mere pleadings themselves"); *Block*, 253

18   F.3d at 418–19 ("To survive summary judgment, a party does not necessarily have to produce

19   evidence in a form that would be admissible at trial, as long as the party satisfies the requirements

20   of Federal Rule of Civil Procedure 56.").

21             To the extent the court cites and relies on evidence here, it overrules any contrary

22   objections for purposes of this motion.  Three objections, however, warrant particular mention.

23   First, Bernhardt relies extensively on a written report on the CDCR's internal investigation.  *See*

24   *generally* Internal Affairs Investigative Report (Inv. Rep.), Bryant Decl. Ex. D, ECF No. 36-7;

25   Pl.'s Opp'n Undisp. Mat. Facts (UMF1), ECF No. 36-2; Def.'s Obj. Undisp. Facts (UMF2), ECF

26   No. 38-1.  The CDCR opposes this court's consideration of that report, predominantly because it

27   argues the report is inadmissible hearsay.  *See, e.g.*, UMF2 no. 81.  Hearsay statements are those

28   "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party

1  offers in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid.

2  801(c).  Hearsay is generally inadmissible unless federal law or the Federal Rules of Evidence

3  provide otherwise.  *Id.* R. 802.  Federal Rules of Evidence 801 and 803 describe a number of

4  exclusions and exceptions to this general rule.

5         Here, the internal report was composed outside of this court, and in many instances

6  Bernhardt offers the report for evidence of Lt. Griffith's and the CDCR's alleged wrongdoing

7  documented within it.  *See, e.g.*, UMF2 no. 93.  It fits the definition of hearsay.  Under the

8  circumstances of this case and motion, however, consideration of the report is proper.  The CDCR

9  or its agents created it, and the circumstances of its creation suggest its reliability and accuracy.  It

10  describes interviews with several witnesses who could testify at trial, and in this way it is

11  demonstrative of genuine disputes of material fact.  It is offered against the CDCR and may also

12  qualify as a record of a regularly conducted activity or a public record.  *See* Fed. R. Evid.

13  801(d)(2), 803(6), (8).  In sum, because the report may fall within an exclusion or exception to the

14  general bar against hearsay statements, because it is indicative of genuine disputes of material

15  fact, and because this court has discretion to grant leniency at this stage of the litigation,

16  exclusion of the report in total is improper here.  *Cf., e.g., Hatcher v. Cnty. of Alameda*,

17  No. 09-1650, 2011 WL 1225790, at *3 (N.D. Cal. Mar. 31, 2011) (denying at summary judgment

18  the defendants' request to exclude as hearsay the contents of an internal investigative report,

19  because, among other reasons, the testimony in question could be admitted directly at trial).  The

20  CDCR may of course later move *in limine* to exclude specific portions of the report, or object to

21  their introduction at trial.

22         Second, Bernhardt relies on a letter she wrote to Associate Warden Peery to show

23  she was "chastised" for seeking evidence of sexual harassment against other employees and to

24  show the CDCR delayed its investigation in retaliation against her.  Bryant Decl. Ex. G, ECF

25  No. 36-10.[1]  The letter, dated May 31, 2012, documents a May 25 telephone conversation

26

27      [1] Bernhardt has not confirmed the contents of this letter by declaration.  The letter was introduced, however, as exhibit 20 in Associate Warden Peery's deposition, and Peery confirmed she received, read, and "understood" what Bernhardt had written in the letter.  Peery Dep. 81:15–

28  25.  Peery recalled the conversation described in the letter, but not "completely," although she

1    between Bernhardt and Associate Warden Peery on May 25, 2012.  *Id.* at 2.  Bernhardt accuses

2    Peery of seeking only to protect Griffith, subjecting her to a "gag order" to prevent her discussion

3    of her claims against him, and warning other employees not to speak with her.  The CDCR argues

4    this letter is inadmissible hearsay.  The letter was composed out of court, and in addition

5    describes a conversation that occurred out of court.  Bernhardt offers it as evidence of the truth of

6    its contents, that is, to show the CDCR in fact sought to delay its investigation in retaliation for

7    her report.  For purposes of this motion, however, and in the appropriate spirit of leniency,

8    because Bernhardt may take the stand at trial and offer the same statements she seeks to admit

9    here by document, this first layer of hearsay is not fatal.  But whether in the letter or on the

10   witness stand, Bernhardt's reports of Peery's words must eventually qualify under an exclusion or

11   exception to the rule against hearsay.  Because Peery's statements were ostensibly offered in her

12   capacity as associate warden, at trial they may be properly excluded from the definition of

13   hearsay by Federal Rule of Evidence 801(d)(2)(D) ("A statement that meets the following

14   conditions is not hearsay: . . . The statement is offered against an opposing party and . . . was

15   made by the party's agent or employee on a matter within the scope of that relationship and while

16   it existed . . . .").  The court will consider the letter for purposes of this motion.

17            Third, Bernhardt relies on her declaration as evidence of her interactions with the

18   Equal Employment Opportunity Commission (EEOC), California Department of Employment

19   and Housing (DFEH), and the CDCR in 2012 and 2013.  *See* Bernhardt Decl., ECF No. 36-18.

20   Her declaration describes phone calls and letters between her and several others.  *See id.* ¶ 2.  The

21   CDCR contends these statements are hearsay.  *See, e.g.*, UMF2 No. 177.  These statements, all

22   made out of court, may nonetheless be admitted for any relevant purpose other than their truth.

23   The apparent purpose for which Bernhardt has offered the statements of EEOC and CDCR

24   ────────────────────────────────

25   remembers "asking [Bernhardt] not to call the institution, admonishing her, telling her she could
     not discuss the investigation because that is a confidential process, not supposed to be talking
26   about it with other staff.  That was the gist of the conversation.  That's what I wrote down." *Id.* at
     83.  This testimony is sufficient to authenticate the letter for purposes of summary judgment. *See*
27   *Las Vegas Sands v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011) (holding a letter "could have been
     authenticated by review of [its] contents if [it] appeared sufficiently genuine" even if not attached
28   to an authenticating affidavit).

1  representatives is not to show, for example, that the EEOC in fact was waiting for the CDCR's

2  internal investigation, *see id.* no. 180, but to show the effect of this statement on Ms. Bernhardt,

3  that is, to dissuade her from filing a formal charge.  Moreover, many of the statements the CDCR

4  contends are hearsay may very well also be admissible in the form of its own statements—those

5  of Bernhardt's party opponent—and excluded from the hearsay rule should the letter itself be

6  offered at trial.  *See, e.g.*, *id.* no. 184 ("On or about April 8, 2013, Plaintiff received a letter form

7  [sic] the OCR stating that it had received Plaintiff's request, the investigation was complete, and

8  her warden at HDSP had the results. . . .").  The objection is overruled for purposes of this

9  motion, but as noted above, at trial this and any evidence may be admitted only in accordance

10  with the Federal Rules of Evidence.

11  II.    <u>BACKGROUND</u>

12          The following facts are not disputed for the purpose of this motion unless

13  otherwise noted.  Bernhardt began working at High Desert State Prison on June 2, 2003.  UMF1

14  no. 1.  Bernhardt alleges Lt. Griffith, her supervisor, began sexually harassing her at work in

15  August 2010.  *Id.* nos. 2, 27–51.  The internal CDCR report describes interviews the CDCR

16  conducted with Bernhardt, her coworkers, and with Lt. Griffith. [2]  Lt. Griffith's reported

17  indiscretions include the following: He referred to Bernhardt as "Hot-Ass Dee Dee" from August

18  2010 through the fall of 2011.  Inv. Rep. at 21, 72.  He referred to other women as "Sugar Tits,"

19  *id.* at 78–79, and "the virgin daughter," *id.* at 79–80, and called other men and women "fat fuck,"

20  *id.* at 82–83, "pussy," *id.* at 84–85, and "pissy pants," *id.* at 71.  He frequently accused Bernhardt

21  and other women of staring at his and other men's crotches.  *Id.* at 81–82.  He once displayed

22  scratch marks on his buttocks supposedly sustained in a recent sexual encounter.  *Id.* at 72–73.

23  On several occasions in 2010 and 2011, he bragged that if Bernhardt and other women would

24  spend one night with him, no other man would satisfy them.  *Id.* at 73–74.  In the summer of

---

26  [2] As described above, the CDCR contends this report is inadmissible hearsay, *see, e.g.*,
   UMF2 no. 94, but does not offer evidence to contradict the report's contents, and agrees that
27  Bernhardt alleges this conduct, *see* UMF1 no. 27–51.  It also relies on these allegations in its
   motion.  *See* Def.'s Mem. P.&A. Mot. Summ. J. 3–4.  The court finds the defendants do not
28  dispute the facts described here for purposes of this motion.

1   2011, he asked Bernhardt's coworker if that coworker had ever given her ex-husband a blowjob;

2   after she admitted to giving him an "accidental blowjob," he distributed a video to the office

3   depicting a man and woman in circumstances he suggested demonstrated how an accidental

4   blowjob could occur.  *Id.* at 74–75.  He once also personally demonstrated how he believed an

5   accidental blowjob may have occurred after removing his trousers, although not his underwear.

6   *Id.* at 75-76.  At some time between November 2011 and January 2012, he grasped the breast of

7   Bernhardt's coworker in her presence.  *Id.* at 77–78.  Neither Bernhardt nor her coworkers

8   immediately reported this conduct.  UMF1 nos. 29, 32, 35, 38, 42, 45, 46, 51.  Several sergeants

9   who worked in the same department denied knowledge of it, and many coworker-interviewees'

10  accounts differ in the details.  *See generally* Inv. Rep.

11       Bernhardt's healthcare provider put her on stress-based medical leave in February

12  2012.  UMF1 nos. 3, 53.  The last day she reported to work was February 23, 2012.  *Id.* no. 3.

13  Some evidence shows she told the CDCR that Lt. Griffith's harassment brought about her leave

14  of absence.  *Id.* nos. 53, 55.  On March 3 and 13, 2012, Bernhardt made her first complaints of

15  sexual harassment and requested an internal investigation.  *Id.* nos. 20–21.  For fear of being

16  labeled a "rat," she had withheld any earlier report.  *Id.* no. 52.  Bernhardt says Lt. Griffith

17  secured employees' continuing tenure in his department by threat and intimidation; she recalls his

18  words: he would "take them down" if they filed a complaint; the CDCR does not agree.  *Id.*

19  no. 54.  The parties do agree Bernhardt did not allege any retaliation in March 2012.  UMF1

20  no. 22.

21       By the CDCR's reckoning, the evidence shows it "immediately developed a plan

22  of action."  *Id.* no. 56.  On March 13, 2012, it interviewed Bernhardt about her complaint, *id.* no.

23  57, and about a week later, it informed her it had reassigned and admonished Lt. Griffith.  *Id.* nos.

24  58–60.  On March 28, 2013, Griffith received a notice of adverse action.  Beckler Decl., Ex. E, at

25  1, ECF No. 33-5.  His pay would be reduced by ten percent for two years, effective May 1, 2013.

26  *Id.*  Griffith retired before the penalty took effect.  UMF1 no. 63; Griffith Dep. 126:20–127:17,

27  ECF No. 36-4.  The CDCR also offered Bernhardt a new position in the accounting office, but

28  she refused.  UMF1 nos. 61–62.

1    Bernhardt argues that other evidence shows how the CDCR dragged its feet.  *Id.*

2  no 56.  After Lt. Griffith was reassigned, on March 24, 2012, Bernhardt and a coworker sent the

3  CDCR a memo expressing their fear that Lt. Griffith would violently retaliate against them.  Inv.

4  Rep. at 9.  Deposition testimony suggests the prison did not address this memo.  *See* UMF1 no.

5  56; Spoon Dep. 82:7–83:11, ECF No. 36-12; Foulk Dep. 46:6–48:12, ECF No. 36-13.  A letter

6  Bernhardt received in April 2012 informed her the CDCR would not investigate her allegations

7  because they were under administrative review.  Bryant Decl. Ex. E, ECF No. 36-8.  On May 25,

8  2012, by Bernhardt's account, an associate warden chastised her for asking others about Griffith's

9  harassment, UMF1 no. 56; UMF2 no. 86, then dismissed her feelings and ignored her complaints,

10  *id.* no. 87.  She argues the CDCR delayed its investigatory interviews for about seven months and

11  withheld information for a year.  UMF1 no. 56; *see* Inv. Rep. (dated February 8, 2013).  The

12  parties agree Bernhardt has remained absent from work since April 2012 due to a back injury

13  unrelated to her claims stemming from Lt. Griffith's actions.  *Id.* no. 72.

14    On May 29, 2012, the CDCR notified Bernhardt by letter an investigation would

15  begin.  Suppl. Bernhardt Decl. Ex. Y, at 17, ECF No. 41.  In August 2012 she first took her case

16  outside the CDCR and filed a pre-complaint questionnaire with the federal Equal Employment

17  Opportunity Commission (EEOC).  EEOC Intake Questionnaire 4, ECF No. 36-19.  She alleged

18  sex discrimination, sexual harassment, and a hostile work environment, but not retaliation.  *Id.* at

19  2.  She requested the EEOC look into the discrimination and confirmed she wanted to file a

20  charge against the CDCR, acknowledging that her name and claims may be disclosed.  *Id.* at 4.

21  The parties agree the EEOC did not forward the intake questionnaire to the California Department

22  of Fair Employment and Housing (DFEH).  In September 2012 she contacted the EEOC again

23  and learned it required more information about the CDCR's internal investigation.  Bernhardt

24  Decl. ¶¶ 2b, 2c, ECF No. 36-18.  Bernhardt contacted the EEOC again in October, November and

25  December of 2012, and in January and March of 2013.  *Id.* ¶¶ 2d–2*l.*

26    In April 2013, Bernhardt received notice the CDCR's internal investigation was

27  complete.  *Id.* ¶ 2m; UMF1 no. 23.  She requested its conclusions.  Bernhardt Decl. ¶ 2m, ECF

28  No. 36-18.  The CDCR later informed her it had sustained nine of her seventeen allegations, *id.*

¶ 2n, and she forwarded this information to the EEOC.  *Id.*  In June 2013, the EEOC told her it had not finished its investigation, *id.* ¶¶ 2q, so she filed a charge of discrimination on July 2, 2013, *id.* ¶¶ 2q, 2s, and requested a right to sue letter, *id.* ¶ 2u, which she received on November 13, 2013, *id.* ¶ 2w.  On June 21, 2013, she also filed a complaint of discrimination with the DFEH and received a right-to-sue letter the same day.  *Id.* ¶ 2r.  Before June 12, 2013, Bernhardt was acting without representation.  Bernhardt Decl. ¶ 3.

The original judicial complaint in this case was filed on July 11, 2013.  Compl., ECF No. 2.  The First Amended Complaint, filed August 15, 2013, remains the operative pleading.  First Am. Compl., ECF No. 8.  Bernhardt alleges two statutory causes of action.  First, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), she alleges sexual harassment, sex discrimination, and the CDCR's retaliation after she made her report.  First Am. Compl. ¶¶ 14–16.  Second, under the California Fair Employment and Housing Act (FEHA), California Government Code § 12940, she alleges the same claims: sexual harassment, sex discrimination, and retaliation.  First Am. Compl. ¶¶ 19–22.

The CDCR moved for summary judgment on December 16, 2014.  ECF No. 33.  It advances three arguments: first, that Bernhardt did not timely exhaust her administrative remedies as to her Title VII and FEHA claims of discrimination and a hostile work environment; second, that it is entitled to an affirmative defense against both the Title VII and the FEHA discrimination claims because its policy against sexual harassment was effective and reasonable and Bernhardt did not take advantage of the CDCR's anti-harassment apparatus; and third, that Bernhardt has put forward insufficient evidence to establish a prima facie case of retaliation under either Title VII or the FEHA.

After reviewing the applicable legal standard, the court evaluates each of the CDCR's arguments in the context of both Title VII and the FEHA.

III.     LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A trial court in receipt of a motion for summary judgment performs a "threshold inquiry" to decide

1   "whether there is the need for a trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250

2   (1986).[3]  The judge does not make findings of fact, but decides more fundamentally whether

3   "there are any genuine factual issues that properly can be resolved only by a finder of fact

4   because they may reasonably be resolved in favor of either party."  *Id.*  Only "*genuine* issue[s] of

5   *material* fact" matter; only "disputes over facts that might affect the outcome of the suit under the

6   governing law will properly preclude the entry of summary judgment." *Id.* at 247–48.

7          The party who moves for summary judgment, here the CDCR, bears the initial

8   burden of "informing the district court of the basis for its motion."  *Celotex*, 477 U.S. at 323.

9   Rule 56 does not require the CDCR to negate Bernhardt's claims with evidence.  *Id.*  Rather the

10  CDCR must show "there is an absence of evidence to support the nonmoving party's case." *Id.* at

11  325.  If it meets this burden, Bernhardt must then respond and show the case is in fact proper for

12  trial, that is, she must "establish that there is a genuine issue of material fact . . . ." *Matsushita*

13  *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986).  Both parties must "cit[e] to

14  particular parts of materials in the record . . . ; or show[] that the materials cited do not establish

15  the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

16  evidence to support the fact."  Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586

17  ("[The nonmoving party] must do more than simply show that there is some metaphysical doubt

18  as to the material facts.").  Unsupported assertions are insufficient: the purpose of summary

19  judgment is "'to pierce the pleadings and to assess the proof.'"  *Id.* at 587 (quoting Fed. R. Civ. P.

20  56(e) advisory committee note on 1963 amendments).  Finally, because the CDCR has moved for

21  summary judgment, the court draws all inferences and views all evidence in the light most

22  favorable to Bernhardt.  *Matsushita*, 475 U.S. at 587–88; *Whitman v. Mineta*, 541 F.3d 929, 931

23  (9th Cir. 2008).

24  /////

25  /////

26  _____

27          [3] Rule 56 was amended, effective December 1, 2010; however, it is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged."  Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010

28  amendments.

1    IV.    ADMINISTRATIVE EXHAUSTION: HARASSMENT CLAIMS

2         Both Title VII and the FEHA require plaintiffs exhaust their administrative

3    remedies before launching judicial complaints of workplace harassment or hostile work

4    environments.  *Wilson-Combs v. Cal. Dep't of Consumer Affairs*, 555 F. Supp. 2d 1110, 1114–15

5    (E.D. Cal. 2008).  Each statute constructs a different regime, although the justification for this

6    administrative hurdle is the same: the statutes empower an administrative agency to dispose of

7    employment discrimination claims first, ideally to foster compliance by conciliation and

8    persuasion.  *Ong v. Cleland*, 642 F.2d 316, 320 (9th Cir. 1981).

9         A.    Title VII

10        Title VII plaintiffs must file timely charges with the EEOC or an equivalent state

11   agency.  *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002), *as amended* (Feb. 20,

12   2002).  The DFEH is such an agency.  *Dornell v. City of San Mateo*, 19 F. Supp. 3d 900, 905

13   (N.D. Cal. 2013).  When a state agency may grant appropriate relief, and the complainant first

14   files a charge with that state agency, Title VII requires a claimant file an administrative charge

15   with the EEOC "within three hundred days after the alleged unlawful employment practice

16   occurred." 42 U.S.C. § 2000e-5(e)(1); *see also E.E.O.C. v. Dinuba Med. Clinic*, 222 F.3d 580,

17   585 (9th Cir. 2000) (summarizing the statute).  If a complainant has filed a charge with the state

18   agency, the charge is not deemed to have been filed with the EEOC, however, until either

19   (a) sixty days elapse, or (b) the state investigation is closed, whichever occurs first.  42 U.S.C.

20   § 2000e-5(c); *Dinuba*, 222 F.3d at 585.  This rule grants the state agency a 60-day window of

21   exclusivity to evaluate the charge.  *Dinuba*, 222 F.3d at 585.  A worksharing agreement between

22   the EEOC and the DFEH further complicates this picture.  Under that agreement, the filing of a

23   charge with one agency is considered a constructive filing with the other, and each organization is

24   the other's agent for this purpose.  *Id.*  "In practical terms, therefore, a charge filed with a state

25   agency within 240 days of the unlawful employment practice will be guaranteed timely filing

26   with the EEOC."  *Id.*  In summary, if Bernhardt filed a charge with the DFEH within 240 days of

27   the last alleged unlawful act of discrimination, it was timely for purposes of Title VII.

28

10

1    Furthermore, if Bernhardt filed a charge with either the EEOC or the DFEH, the charge will be

2    deemed jointly filed if it falls within those agencies' worksharing agreements.

3            Title VII does not define "charge," but requires charges "shall be in writing under

4    oath or affirmation and shall contain such information and be in such form as the Commission

5    requires." 42 U.S.C. § 2000e-5(b). The applicable procedural regulations require a charge

6    include the complainant's name, contact information, the name and address of the target

7    employer, a description of the claim, the number of affected persons, and information whether

8    state proceedings have already commenced. *See* 29 C.F.R. § 1601.12(a).[4] Satisfaction of these

9    default requirements is necessary but not sufficient to make out a "charge." *See Federal Exp.*

10   *Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (interpreting the regulations in the context of the

11   Age Discrimination Employment Act of 1967, 29 U.S.C. § 621 *et seq.*). To be a "charge," the

12   filing must also be reasonably understood to embody a request for the agency to "activate its

13   machinery" on the complainant's behalf. *Id.* at 402.

14           Here, the parties agree Bernhardt filed a formal DFEH charge on June 21, 2013,

15   and a formal EEOC charge on July 2, 2013. UMF1 nos. 24, 25. June and July 2013 are nearly

16   five hundred days beyond February 2012, Bernhardt's last day of work. Both formal complaints

17

18           _____

             [4] The full text of this regulation reads as follows:

19           Each charge should contain the following: (1) The full name, address and
             telephone number of the person making the charge except as provided in
20           § 1601.7; (2) The full name and address of the person against whom the
             charge is made, if known (hereinafter referred to as the respondent); (3) A
21           clear and concise statement of the facts, including pertinent dates,
             constituting the alleged unlawful employment practices: See § 1601.15(b);
22           (4) If known, the approximate number of employees of the respondent
             employer or the approximate number of members of the respondent labor
23           organization, as the case may be; and (5) A statement disclosing whether
             proceedings involving the alleged unlawful employment practice have been
24           commenced before a State or local agency charged with the enforcement of
             fair employment practice laws and, if so, the date of such commencement
25           and the name of the agency.

26   29 C.F.R. § 1601.12(a). The regulation also provides that "[n]otwithstanding the provisions of
     paragraph (a) of this section, a charge is sufficient when the Commission receives from the
27   person making the charge a written statement sufficiently precise to identify the parties, and to
     describe generally the action or practices complained of." *Id.* § 1601.12(b).

28

are therefore too late.  Bernhardt can only have filed a timely charge if another filing satisfies the definition of "charge" and was timely.  Bernhardt argues the EEOC Intake Questionnaire she signed on August 25, 2012, fits the bill.  *See* EEOC Intake Questionnaire 4, ECF No. 36-19.  In her questionnaire, Bernhardt provided her name and contact information, the name and contact information for High Desert State Prison, named Lt. Griffith as her harasser, and noted her attachment of an "intake package, letter and memos," noting "witness information is included in the EEO pk." *Id.* at 1–2.  In a supplemental declaration, Bernhardt says she also attached internal EEO complaint material to her questionnaire.  Suppl. Bernhardt Decl. ¶ 3, ECF No. 41.  Bernhardt also checked a box next to the following statement:

> I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above.  **I understand that the EEOC must give the employer, union or employment agency that I accuse of discrimination information about the charge, including my name.**  I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

EEOC Intake Questionnaire 4, ECF No. 36-19 (emphasis in original).  The intake questionnaire reads, in fine print on the last page, "Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge."[5] *Id.*  Bernhardt has also described her multiple contacts with the EEOC's employees, her effort to pursue an investigation of discrimination, and her desire to obtain a right-to-sue letter.  *See* Bernhardt Decl. ¶ 2, ECF No. 36-18.

The questionnaire does not include any language to show it was signed under oath or affirmation; however, this omission is not fatal.  *See Edelman v. Lynchburg Coll.*, 535 U.S. 106, 112–13 (2002) (rejecting the argument that a charge is not a charge until the filer satisfies

---

[5] The full text of 29 C.F.R § 1601.12(b) is reproduced in footnote 4 above.  Section 1626.8(c) reads as follows: "A charge may be amended to clarify or amplify allegations made therein.  Such amendments and amendments alleging additional acts which constitute unlawful employment practices related to or growing out of the subject matter of the original charge will relate back to the date the charge was first received.  A charge that has been so amended shall not again be referred to the appropriate State agency."

1    Title VII's oath or affirmation requirement).  In all other respects the intake questionnaire fits the

2    definition of a charge: it is in writing, satisfies the minimal regulatory requirements, and a

3    reasonable factfinder could conclude Bernhardt intended the EEOC to swing into action on her

4    behalf.  Other district courts have held similarly.  For example, in *Leftwich v. Gallaudet Univ.*, the

5    plaintiff alleged race and disability discrimination.  878 F. Supp. 2d 81, 86 (D.D.C. 2012).  His

6    intake questionnaire generally described discriminatory acts, including "'racial slurs, verbal

7    harassment' by [a supervisor] as well as 'suspen[sion] for 5 days for insubordination.'"  *Id.* at 91.

8    He checked a box on the intake questionnaire to verify he "want[ed] to file a charge of

9    discrimination" and "authorize[d] the EEOC to look into the discrimination" described in the

10   questionnaire.  *Id.*  These statements were sufficient to deem the questionnaire a charge.  *Id. See*

11   *also Enoch v. Becton, Dickinson & Co.*, No. 11-3551, 2012 WL 2371049, at *7 (D. Md. June 22,

12   2012) (holding similarly).

13           Bernhardt submitted her intake questionnaire on August 26, 2012.  Bernhardt

14   Suppl. Decl. ¶ 3, ECF No. 41.  As described above, if the questionnaire is also a "charge" within

15   the meaning of that agreement, it was constructively filed with both agencies when the EEOC

16   received it.  The date 240 days before August 26, 2012 fell on December 30, 2011, while

17   Bernhardt was still working in the same unit as Griffith, and Bernhardt reported Griffith's

18   harassment continued into 2012.  *See* Inv. Rep. 23–24.[6]

19           No party has adequately addressed the EEOC-DFEH worksharing agreement and

20   whether the EEOC intake questionnaire falls within its scope.  Neither has the CDCR put forward

21   any argument to establish the temporal bounds of the alleged unlawful harassment; it only

22   assumes for purposes of argument that Lt. Griffith could not have harassed Bernhardt any later

23   than February 23, 2012, the last day she worked before taking her leave.  Because the court must

24   view the evidence in the light most favorable to Bernhardt, *Matsushita*, 475 U.S. at 587–88, and

25   _____

26   [6] This conclusion infers Bernhardt's filing of a constructive DFEH complaint from the EEOC
     intake questionnaire, essentially reversing the process described in *Dinuba*, *see* 222 F.3d at 585,
27   and disregarding whether the DFEH was aware of the EEOC intake questionnaire, which the
     parties agree was not forwarded.  Nevertheless, as the court concludes below, Bernhardt's judicial
28   complaint would have been timely even based solely on her formal charges.

1     because the CDCR bears the initial burden to demonstrate the lack of "evidence to support the

2     nonmoving party's case," *Celotex*, 477 U.S. at 325, summary judgment may not be granted for

3     failure to exhaust Title VII administrative remedies.

4                 Even if Bernhardt's case depended solely on her formal charges, the court still

5     would not grant summary judgment.  Although Title VII's procedural requirements, including its

6     time limits, are strictly enforced, *Villalvaso v. Odwalla, Inc.*, No. 10-02369, 2011 WL 1585604,

7     at *2 (E.D. Cal. Apr. 25, 2011), they are not jurisdictional requirements, and are subject to

8     waiver, estoppel, and equitable tolling, *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393

9     (1982).  The doctrine is meant to avoid injustice in the face of good-faith error.  *Villalvaso*, 2011

10    WL 1585604, at *4.  The Ninth Circuit has acknowledged that no formula can dictate its

11    applicability, but has distilled four factors to use in determining whether equitable tolling is

12    available to a discrimination plaintiff: (1) the plaintiff's diligent pursuit of a claim; (2) the

13    administrative agency's provision of misinformation or misleading statements; (3) the plaintiff's

14    reliance on the misinformation or misrepresentation; and (4) the plaintiff's lack of representation

15    at the time.  *Rodriguez v. Airborne Express*, 265 F.3d 890, 902 (9th Cir. 2001) (applying factors

16    in a FEHA case); *Valentine v. California Emp't Dev. Dep't*, No. 10-8717, 2012 WL 386682, at *4

17    (C.D. Cal. Feb. 6, 2012) (applying factors in a Title VII case).

18                Viewing the evidence relevant to tolling in the light most favorable to

19    Ms. Bernhardt, her affidavits describe how she contacted the EEOC many times during the year

20    after she left High Desert State Prison, seeking an administrative charge and investigation.  A

21    reasonable factfinder could conclude this evidence shows the EEOC discouraged her from filing a

22    formal charge while the CDCR investigated her complaint, or that it advised her not to file a

23    formal charge, or that she got no clear answer.  Bernhardt may be found to have misplaced her

24    reliance on the EEOC's representations, or lack thereof.  The parties do not dispute she had no

25    lawyer at the time.  Title VII's provisions on administrative exhaustion, and the case law

26    interpreting these provisions, present a formidable barrier to understanding for the untrained,

27    pro se complainant.  The record before the court does not demonstrate conclusively that

28    Bernhardt is not eligible for equitable tolling, if she needs tolling to have satisfied exhaustion.

1    The court denies summary judgment on Bernhardt's Title VII discrimination and hostile work
2    environment claims.

3         B.    FEHA

4              An employee seeking relief for discrimination or a hostile work environment under
5    the FEHA must file a verified complaint with the DFEH within one year of the last alleged
6    unlawful practice.  Cal. Gov't Code § 12965(b), (d).  If the DFEH does not institute a civil action
7    within 150 days, or if it elects not to bring an action, the complainant employee may seek judicial
8    relief.  *Id.* § 12965(b); *Rojo v. Kliger*, 52 Cal. 3d 65, 83 (1990).  As noted above, the CDCR omits
9    discussion of the EEOC/DFEH worksharing agreement and the effect of Bernhardt's EEOC
10   intake questionnaire.  CDCR's evidence and argument only tangentially address the date the
11   alleged unlawful harassment ceased.  Even if CDCR had carried its burden to show Bernhardt
12   filed a qualifying complaint on the date she filed her DFEH complaint, June 21, 2013, and no
13   earlier, summary judgment is nonetheless improper.  Even though June 21, 2013, is more than
14   one year after Lt. Griffith's alleged harassment and the end of Bernhardt's employment, UMF1
15   no. 24, the evidence suggests the FEHA limitations period would be equitably tolled to permit
16   Bernhardt's filing on June 21, 2013, as discussed below.

17             A federal district court may entertain arguments for equitable relief in the face of
18   the FEHA's statute of limitations.  *Rodriguez v. Airborne Express*, 265 F.3d 890, 900 (9th Cir.
19   2001); *MacDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 102 (2008).  The doctrine
20   of equitable tolling permits a plaintiff to pursue non-judicial remedies without forfeiting recourse
21   to the courts, should those non-judicial remedies prove deficient.  *Williams v. Gyrus ACMI, LP*,
22   No. 14-00805, 2014 WL 4771667, at *5 (N.D. Cal. Sept. 24, 2014) (citing *Addison v. State of
23   Cal.*, 21 Cal. 3d 313 (1978)).  The California Supreme Court has held that equitable tolling
24   applies when a defendant has timely notice of a complaint, is not prejudiced by tolling, and the
25   plaintiff acted in good faith.  *MacDonald*, 45 Cal. 4th at 102.  The *MacDonald* court expressly
26   endorsed the expansion of this test articulated in *Downs v. Department of Water & Power*, 58 Cal.
27   App. 4th 1093, 1100 (1997), and *Collier v. City of Pasadena*, 142 Cal. App. 3d 917, 924–26
28   (1983).  The first requirement, notice to the defendant, "essentially means that the first claim must

15

1   have been filed within the statutory period." *Collier*, 142 Cal. App. 3d at 924.  This requirement

2   works to alert the defendant of the need to investigate the facts forming the basis of the judicial

3   complaint.  *Id.*  The second requirement, lack of prejudice to the defendant, "essentially translates

4   to a requirement that the facts of the two claims be identical or at least so similar that the

5   defendant's investigation of the first claim will put [it] in a position to fairly defend the second."

6   *Id.* at 925.  The third requirement, the plaintiff's good faith and reasonable conduct, is less clearly

7   defined, but the plaintiff should file the judicial complaint "a short time after tolling end[s]."  *Id.*

8   at 926 (citing *Addison v. State of California*, 21 Cal. 3d 313, 319 (1978)).

9          Here, when viewed in the light most favorable to Bernhardt, the evidence supports

10  giving her the benefit of equitable tolling.  To the first *MacDonald* requirement, the "first claim"

11  is Bernhardt's request to investigate Lt. Griffith in March 2012, well within one year of the

12  alleged harassment in mid-to-late-2011 and early 2012.  *See generally* Internal Affairs

13  Investigative Report, Bryant Decl. Ex. D, ECF No. 36-7; UMF2 (describing the CDCR's

14  objections to that Report).  To the second *MacDonald* requirement, Bernhardt's March 2012

15  complaints to CDCR and her formal FEHA complaint each allege Lt. Griffith's sexual

16  harassment of her and her coworkers over the same period of time.  They are essentially identical

17  in this respect.[7]  Finally, the evidence also satisfies the third *MacDonald* requirement, Bernhardt's

18  diligence.  Her affidavits describe her efforts throughout 2012 and 2013 to advance her case, even

19  when she had no legal representation.  This evidence is admissible and cognizable in this context.

20  *Rodriguez*, 265 F.3d at 902.  The CDCR's attack on Bernhardt's diligence is more appropriately

21  addressed in the context of its affirmative defenses, discussed below.

22         The CDCR has not satisfied its initial burden to show an absence of genuinely

23  disputed material facts surrounding the question of administrative exhaustion of plaintiff's FEHA

24  claims of discrimination and a hostile work environment.  The court denies summary judgment on

25  this claim.

26

27         [7]  Bernhardt's retaliation claims, alleged only in her "second" DFEH complaint, are
        dissimilar to her sexual harassment claims.  The court addresses her retaliation claims separately
28      below.

16

1    V.    AFFIRMATIVE DEFENSES

2         A.    Title VII:  Reasonable Care

3              1.    Doctrine; Legal Standards

4         When an employee's supervisor creates a hostile work environment, for example

5    by sexual harassment, the employer is vicariously liable for the harassment.  *Burlington*

6    *Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S.

7    775, 807 (1998).  The defendant employer has no defense to this liability if the harassment

8    "culminates in a tangible employment action."  *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at

9    808 (1998).  The term "tangible employment action" does not appear in the statute, but rather is a

10   judicial creation.  The U.S. Supreme Court describes tangible employment actions as "the means

11   by which the supervisor brings the official power of the enterprise to bear on subordinates";

12   "official act[s] of the enterprise"; "company act[s]"; usually those "documented in official

13   company records" and "subject to review by higher level supervisors."  *Ellerth*, 524 U.S. at 762.

14   To invoke such an action the supervisor obtains "the imprimatur of the enterprise."  *Id.*  "A

15   tangible employment action in most cases inflicts direct economic harm."  *Id.*

16        If the employer does not take a "tangible employment action," it may assert a

17   defense, subject to proof by a preponderance of evidence: first that it "exercised reasonable care

18   to prevent and correct promptly any sexually harassing behavior"; and second "that the plaintiff

19   employee unreasonably failed to take advantage of any preventive or corrective opportunities

20   provided by the employer or to avoid harm otherwise."  *Id.* at 765; *Faragher*, 524 U.S. at 807

21   (1998).  The employer's proof of reasonable care can include evidence of its policy against sexual

22   harassment; its proof of the employee's unreasonable failure can include that he or she did not file

23   an internal complaint.  *Ellerth*, 524 U.S. at 807.

24        The Supreme Court has extended the reasonable-care affirmative defense to

25   constructive discharges.  *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 143 (2004).  An

26   employee is constructively discharged if working conditions were so objectively intolerable as to

27   compel her resignation.  *Id.* at 141.  The Court's articulation of the defense in a constructive

28   discharge case is essentially the same as set forth above: "An employer may defend against such a

17

1   claim by showing both (1) that it had installed a readily accessible and effective policy for

2   reporting and resolving complaints of sexual harassment, and (2) that the plaintiff unreasonably

3   failed to avail herself of that employer-provided preventive or remedial apparatus." *Id.* at 134.

4   The affirmative defense "will not be available to the employer, however, if the plaintiff quits in

5   reasonable response to an employer-sanctioned adverse action officially changing her

6   employment status or situation, for example, a humiliating demotion, extreme cut in pay, or

7   transfer to a position in which she would face unbearable working conditions." *Id.*

8           2.      Analysis

9           Here, the CDCR took no tangible employment action and did not subject

10  Bernhardt to working conditions so intolerable that she was forced to resign.  The parties agree

11  Bernhardt remains a CDCR employee and her continued absence is due to an unrelated injury.

12  The affirmative defense described in *Ellerth* and *Faragher* is therefore available to the CDCR,

13  and the parties' dispute focuses on that defense: (1) whether the CDCR's efforts to prevent and

14  eliminate sexual harassment were reasonable and effective and (2) whether Bernhardt acted

15  unreasonably when she did not report Lt. Griffith's conduct earlier.

16          First, the CDCR must show it exercised reasonable care both to prevent sexual

17  harassment and to address it once discovered.  *See Hardage v. CBS Broad., Inc.*, 427 F.3d 1177,

18  1188 (9th Cir. 2005) ("[W]e construe[] this standard to require both preventive and remedial

19  measures."), *amended on denial of reh'g*, 433 F.3d 672 and 436 F.3d 1050 (2005).  On the first

20  question, prevention, the evidence shows the CDCR's policies expressly forbid sexual

21  harassment, and Bernhardt acknowledges her participation in a long list of anti-harassment

22  training sessions.  UMF1 nos. 4–19.  On the second point, remediation, the evidence before the

23  court creates a triable issue of fact.  Bernhardt cites evidence a reasonable jury could conclude

24  shows the CDCR unreasonably delayed its investigation, upbraided her for seeking evidence, did

25  not effectively punish Lt. Griffith, or withheld reprimand of coworkers, who she says covered up

26  or withheld evidence of Lt. Griffith's harassment.  A reasonable jury could also credit evidence

27  that the CDCR immediately reassigned and reprimanded Lt. Griffith.  The equally plausible

28  outcomes defeat summary judgment.

1    Whether Bernhardt unreasonably ignored the CDCR's preventative and remedial

2    apparatus is a knottier question.  As described above, the alleged harassment began in August

3    2010, but Bernhardt did not make a report until March 2012.  She completed an EEOC intake

4    questionnaire in August 2012, and filed formal charges with the DFEH and EEOC in June and

5    July 2013.  In *Holly D. v. California Inst. of Tech.*, the Ninth Circuit found in somewhat similar

6    circumstances that the employee had unreasonably delayed reporting harassment.  339 F.3d 1158,

7    1178–79 (9th Cir. 2003).  In that case the plaintiff had not sought relief during a year of sexual

8    harassment, until two years after the first incident.  *Id.*  She explained her inaction grew out of

9    discomfort with the employer's reporting system, which arose from bad experiences during

10   previous discrimination complaints.  *Id.; see also Montero v. AGCO Corp.*, 192 F.3d 856, 863

11   (9th Cir. 1999) (finding the employer had successfully asserted an affirmative defense under

12   *Faragher*, *supra,* by showing the plaintiff employee "knew about [its] policy prohibiting sexual

13   harassment and had received several copies of it" and "knew whom to contact if she was being

14   subjected to sexual harassment," but waited two years to complain, after which the defendant's

15   actions were "swift and certain").  Although similar to this case in terms of their chronologies,

16   *Holly D.* and *Montero* are distinguishable.  A reasonable jury could find Bernhardt's years-long

17   hesitation reasonable in the face of the prison's hierarchy, the threats allegedly made by

18   Lt. Griffith, a male-dominated workplace, pressure not to "rat out" other employees, and the

19   CDCR's allowing Griffith to retire before his pay was docked as a penalty for his behavior.  The

20   court denies summary judgment on the reasonable care defense.

21       B.    FEHA:  Avoidable Consequence

22   The California Supreme Court interprets the FEHA to impose strict liability on

23   employers whose employee-supervisors sexually harass subordinates.  *State Dep't of Health*

24   *Servs. v. Superior Court*, 31 Cal. 4th 1026, 1034 (2003).  Nevertheless, the common-law doctrine

25   of avoidable consequences — a doctrine generally applicable whenever an injured person may

26   have avoided injury by reasonable effort or expenditure — fits within FEHA's statutory scheme.

27   *Id.* at 1043.  After all, an employer cannot be expected to stamp out sexual harassment in its ranks

28   without having reason to suspect any harassment in the first place.  *Id.* at 1049.  If an employee

19

1   shows the employer is liable for a supervisor's sexual harassment, the employer may not avoid

2   liability, but it may reduce or eliminate any damages owed by pleading and proving three points:

3   (1) it took reasonable steps to prevent and correct the sexual harassment; (2) the employee

4   unreasonably failed to use preventive and corrective measures provided; and (3) reasonable use of

5   those procedures would have prevented some of the harm suffered.  *Id.* at 1044.  The standard of

6   reasonableness "'is not as high as the standard required in other areas of law.'"  *Id.* at 1045

7   (quoting *Green v. Smith*, 261 Cal. App. 2d 392, 396 (1968)).

8          At the same time, however, the FEHA must be construed to protect employees.  *Id.*

9   at 1040 (citing Cal. Gov't Code § 12993).  The California Supreme Court has suggested

10  temperance in application of the avoidable consequences doctrine.  For example, an employee

11  may fear reprisals for reporting sexual harassment.  *Id.* at 1045.  "[N]atural feelings of

12  embarrassment, humiliation, and shame" may reasonably delay a report.  *Id.*  Or the employer

13  may not have "consistently and firmly" enforced its policy.  *Id.*  The question of the plaintiff's

14  reasonableness is usually one for the finder of fact to resolve.  *Id.*  Here, a reasonable jury could

15  conclude that Bernhardt's complaints, though delayed, measured up to an appropriately lowered

16  bar.  She proposes as justifications her fear of violent reprisal from Lt. Griffith, fear of becoming

17  a "rat," and the pressures and disincentives created by a male-dominated environment and the

18  hierarchical reporting structure within High Desert State Prison.  Or a jury could dismiss these

19  concerns and find a reasonable employee would have sounded the alarm much sooner given the

20  outrageous and obnoxious nature of Griffith's conduct.  Because both conclusions are possible,

21  summary judgment cannot be granted on the avoidable consequences defense to the FEHA claim.

22  VI.    RETALIATION

23         A.    Title VII

24         Title VII also requires Bernhardt to exhaust her administrative remedies before

25  bringing her retaliation claims.  *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 644 (9th Cir. 2003), *as*

26  *amended* (Jan. 2, 2004).  The jurisdictional scope of a Title VII claim is only as wide as the scope

27  of the EEOC charge and investigation.  *Sommatino v. United States*, 255 F.3d 704, 708 (9th Cir.

28  2001).  In other words, the court may not consider allegations absent from the EEOC charge and

1   investigation unless those omitted charges could "'reasonably be expected to grow out of'" the

2   wrongs originally alleged.  *B.K.B.*, 276 F.3d at 1100 (quoting *EEOC v. Farmer Bros. Co.*, 31 F.3d

3   891, 899 (9th Cir. 1994)) (emphasis omitted).  The court may not consider new allegations unless

4   they are "'like or reasonably related to the allegations contained in the EEOC charge.'"  *Id.*

5   (quoting *Green v. L.A. Cty. Superintendent of Schs.*, 883 F.2d 1472, 1475–76 (9th Cir. 1989)).

6   Appropriate factors to consider in this context include "the alleged basis of the discrimination,

7   dates of discriminatory acts specified within the charge, perpetrators of discrimination named in

8   the charge, and any locations at which discrimination is alleged to have occurred."  *Id.*

9          Here, the parties do not dispute that Bernhardt's internal CDCR complaints and

10   her EEOC intake questionnaire omitted any claim of retaliation.  UMF1 no. 22; Intake

11   Questionnaire, Bryant Decl. Ex. P, at 2, ECF No. 36-19 (showing, for example, that Bernhardt did

12   not check the box for "retaliation" and only described "sexual harassment" and a "hostile work

13   environment").  The EEOC charge likewise includes no "x" in the box next to "retaliation."  *Id.*

14   Neither her intake questionnaire nor her formal EEOC charge names any person other than

15   Griffith.  Her intake questionnaire and charge allege discrimination before she took a leave of

16   absence, but retaliation could only have occurred afterwards.

17          Nevertheless, Bernhardt's EEOC charge describes her fear of Lt. Griffith's

18   retaliation against her, although not directly from the CDCR.  *See* Charge of Discrimination,

19   Bryant Decl. Ex. T, ECF No. 36-23 ("In or about March 2012, I filed a complaint with [the

20   CDCR's] Equal Employment Opportunity office, resulting in Mr. Griffith's removal from the job

21   site.  However, I believe potential retaliation from Mr. Griffith, and that matters could become

22   much worse.").  An employer may be vicariously liable if it "fail[s] to prevent and promptly

23   correct retaliation alleged to have been committed by a supervisor."  *Reiber v. City of Pullman*,

24   No. 11-0129, 2013 WL 3984442, at *20 (E.D. Wash. Aug. 1, 2013) (citing *Ellerth*, 524 U.S. at

25   765).  *See also Muraj v. UPS Freight Servs.*, No. 04-6563, 2006 WL 2528538, at *3 (W.D.N.Y.

26   Aug. 31, 2006) (collecting authorities).  Bernhardt does not make this argument, and the parties'

27   briefing and arguments at hearing did not address it.  Bernhardt does argue the investigation of

28   /////

21

1   her claims, including that she feared "matters could get much worse," would necessarily uncover

2   Griffith's retaliation.  Opp'n 19–20.

3            Assuming Bernhardt's retaliation claim had been timely, the facts before the court

4   would not allow that claim to go forward.  A plaintiff's prima facie case of retaliation must

5   establish (1) the employee engaged in a protected activity, (2) the employer subjected the

6   employee to an adverse action, and (3) a causal link exists between the protected activity and the

7   employer's action.  *E.g.*, *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1035 (9th Cir.

8   2006).  "[A]n adverse employment action is one that materially affects the compensation, terms,

9   conditions, or privileges of employment."  *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th

10  Cir. 2008) (citations, internal quotation marks, and alterations omitted).  A delayed investigation,

11  or even interference with an investigation, is generally not an adverse employment action.  *See,*

12  *e.g.*, *Lewis v. Tyson Foods, Inc.*, No. 11-442, 2013 WL 5852659, at *3 (N.D. Ind. Oct. 29, 2013)

13  (delay); *Keeley v. Small*, 391 F. Supp. 2d 30, 37-38 (D.D.C. 2005) (interference).  *See also Ray v.*

14  *Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000) (describing the Ninth Circuit's definition of

15  adverse employment action as similar to that of the Seventh and D.C. Circuits, among others);

16  *Quantz v. Edwards*, No. 04-5737, 2006 WL 1277093, at *6 (W.D. Wash. May 5, 2006) ("[The

17  plaintiff] failed to provide any evidence from which a jury could conclude . . . that the decision to

18  delay [an] internal investigation would be reasonably likely to deter other employees from

19  running for office.), *aff'd in relevant part*, 264 F. App'x 625 (9th Cir. 2008) (unpublished)

20  ("[N]either the investigation nor its delay constituted an adverse employment action . . . .").

21           Bernhardt cannot salvage her retaliation claim by citing the alleged inaction of

22  several sergeants who worked in the same office with her and Griffith.  *See* Opp'n 19, ECF No.

23  36.  She raised this theory of liability for the first time in opposition to this motion and has

24  presented the court with no legal authority, binding or otherwise, to support her position.  Neither

25  can she proceed on a vicarious-liability theory of Griffith's personal retaliation against her; she

26  has not alleged or made any effort to prove he actually retaliated after she reported his behavior.

27  Summary judgment must be granted.

28  /////

1         B.     FEHA

2            California law likewise prevents a plaintiff from alleging claims in her judicial

3   complaint that were absent from her administrative charge. *Rodriguez*, 265 F.3d at 897 ("The

4   scope of the written administrative charge defines the permissible scope of the subsequent civil

5   action.") (citing *Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1121 (1989)).  The FEHA

6   mirrors federal law on this point. *See, e.g.*, *Sandhu v. Lockheed Missiles & Space Co.*, 26 Cal.

7   App. 4th 846, 859 (1994) (adopting the federal standard).

8            Unlike Bernhardt's EEOC complaints, her DFEH complaint includes an express

9   allegation of retaliation. *See* Bryant Decl. Ex. S, at 1, ECF No. 36-22.  Nevertheless, she has not

10  provided sufficient evidence to survive the CDCR's motion.  California law requires a plaintiff

11  alleging retaliation in violation of the FEHA show "(1) he or she engaged in a 'protected activity,'

12  (2) the employer subjected the employee to an adverse employment action, and (3) a causal link

13  existed between the protected activity and the employer's action." *Yanowitz v. L'Oreal USA,*

14  *Inc.*, 36 Cal. 4th 1028, 1042 (2005).  Whether an employer's action was retaliatory and forbidden

15  by the FEHA depends on application of the "materiality" test, that is, did the action "materially

16  affect the terms and conditions of employment"? *Id.* at 1036.  Not only "ultimate employment

17  actions" qualify; a wide spectrum of actions may fit the bill if "reasonably likely to adversely and

18  materially affect an employee's job performance or opportunity for advancement in his or her

19  career." *Id.* at 1053–54.  The law prohibits an employer both from striking with "one swift

20  blow," and by serial, cumulative, "subtle, yet damaging, injuries." *Id.* at 1055.

21           Here, the CDCR has shown the terms of Bernhardt's employment have not

22  changed since she reported Griffith's conduct and took medical leave, and that although its

23  investigation was protracted, it undertook relatively swift remedial action, not retaliation.  The

24  CDCR reassigned Griffith and offered Bernhardt a new job.  Griffith has now left the CDCR.

25  Bernhardt remains out of work due to an unrelated injury, not because there is a danger of future

26  harassment.  Summary judgment will be granted on this claim.

27  /////

28  /////

VII.   <u>CONCLUSION</u>

The motion for summary judgment is DENIED as to Bernhardt's Title VII and FEHA claims for harassment and a hostile work environment, including in light of the available affirmative defenses.  The motion is GRANTED as to her claims for retaliation under the same statutes.  This order disposes of ECF No. 33.

IT IS SO ORDERED.

DATED: April 29, 2015.

_____
UNITED STATES DISTRICT JUDGE